# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY WEAVER, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. CIV-19-299-STE ) |
| ANDREW M. SAUL,<br>**Commissioner of the Social Security Administration**, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued a partially unfavorable decision. (TR. 21-35). Subsequently, the Appeals Council

denied Plaintiff's request for review,[1] making the ALJ's decision the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 23, 2015, his amended alleged onset date. (TR. 24). At step two, the ALJ determined that Mr. Weaver had the severe impairment of disorder of the spine. (TR. 24). At step three, the ALJ found that Plaintiff's impairment did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 26).

At step four, the ALJ concluded that between the amended alleged onset date of disability of October 23, 2015 through March 26, 2017, Mr. Weaver retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a), except he could only occasionally stoop. (TR. 26).[2] At the administrative hearing, the ALJ presented these limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 75-76). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 76-78). The ALJ adopted the VE's testimony and concluded that between October

---

[1] (TR. 1-3).

[2] The only relevant period is between October 23, 2015 through March 26, 2017, when the ALJ concluded that Plaintiff was not disabled. The ALJ concluded that Mr. Weaver was disabled beginning March 27, 2017 through the date of the decision.

2

23, 2015 through March 26, 2017, Mr. Weaver was not disabled at step five based on his ability to perform the identified jobs. (TR. 34, 35).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUE PRESENTED

On appeal, Mr. Weaver alleges the ALJ erred in his treatment of findings from two medical providers. (ECF No. 12:3-12).

## V. THE ALJ'S EVALUATION OF FINDINGS FROM TWO MEDICAL PROVIDERS

Plaintiff alleges that the ALJ improperly considered opinions from Dr. Stephen Wilson and Dr. R.D. Schubert. (ECF No. 12:3-12). The Court disagrees.

On April 7, 2016, Dr. Wilson examined Plaintiff in connection with a worker's compensation claim which involved injuries to Plaintiff's cervical and lumbar spines and his right shoulder and arm. (TR. 606-612). Ultimately, Dr. Wilson rendered several opinions regarding:

- the cause of Plaintiff's injuries;

- a decrease in Plaintiff's range of motion in his lumbar flexion and extension as well as his left and right lateral flexion;

- weakness in Mr. Weaver's lumbar flexors and extensors and weakness and neuropathy in Plaintiff's left lower extremity;

- the fact that Plaintiff had reached maximum medical improvement and sustained a 54% whole person permanent partial impairment to his lumbar spine;

- Plaintiff's need for pain management;

- Plaintiff's need to see a urologist for his sexual dysfunction which was secondary to his work-related injury;

- Plaintiff's entitlement to disfigurement;

- Plaintiff's inability to perform his prior work duties; and

- Plaintiff's ability to perform work so long as it involved no lifting, carrying, pushing, or pulling of greater than 50 pounds.

(TR. 611-612).

On September 7, 2016, Dr. Schubert authored an "Electrodiagnostic Report" which showed "moderate" findings on Plaintiff's left peroneal nerve[3] and "severe" findings for the L5-S1 pain pathway on Plaintiff's left sural nerve.[4] (TR. 651). As a result, Dr. Schubert stated that "[a] compressive lesion at the L5-S1 spinal level should be considered [and] [c]omparison with lumbar MRI study may be diagnostic." (TR. 651).

The ALJ noted Dr. Wilson's examination and Dr. Schubert's report and stated:

> Examination by M. Stephen Wilson, M.D., in April 2016 showed decreased lumbar flexion and extension; left lower extremity weakness; and weakness of the lumbar flexors and extensors. … Sensory nerve conduction study in September 2016 showed moderate findings on the peroneal nerve on the left at L5 and severe findings of the surreal [sic] nerve on the left at S1.

(TR. 30). Mr. Weaver takes issue with the ALJ's treatment of both physicians' findings, arguing "the ALJ erred when he gave less than controlling weight or great weight to two *objectively determined* opinions that told him, by objective testing, that Mr. Weaver was not neurologically intact, had weakness in the legs, and he would be extremely limited in walking and standing secondary to severe neurologic loss of function—he cannot feel his feet and he has weakness." (ECF No. 12:9). According to Mr. Weaver, the ALJ "played doctor", minimizing the physicians' findings in lieu of his own subjective opinion. (ECF No. 12:9).

---

[3] The peroneal nerve is on the outside of the fibula just below the knee. *See* https://www.mayoclinic.org/diseases-conditions/foot-drop/multimedia/peroneal-nerve/img-20008172.

[4] The sural nerve arises below the knee and travels superficially in the posterior leg. *See* https://www.sciencedirect.com/topics/neuroscience/sural-nerve.

The Court begins by noting that the ALJ has a duty to consider all medical opinions in the record and discuss the weight he assigns to such opinions. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). A "medical opinion," in turn, is a regulatory term reserved for "judgments about the nature and severity of a claimant's impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical and mental restrictions." *Lackey v. Barnhart,* 127 F. App'x 455, 457 (10th Cir. 2005) (alterations and internal quotation marks omitted); *accord* 20 C.F.R. §§ 404.1527(a)(1).

Dr. Schubert's report does not qualify as a "medical opinion" which the ALJ was required to weigh, as it merely reported findings regarding particular nerves tested and suggested that further studies were warranted which "may be diagnostic." (TR. 651). Dr. Schubert neither diagnosed Plaintiff nor made any statement about Mr. Weaver's symptoms or specific work-related abilities or limitations. Dr. Wilson's report, on the other hand, is considered a "medical opinion" which the ALJ was required to weigh. The ALJ's failure to expressly weigh the opinion constitutes error, but the error is harmless.

Mr. Weaver contends that he ALJ "failed to recite all of Dr. Wilson's findings,"[5] but Plaintiff does not identify any particular "findings" or specify why he believes consideration of the same would have helped him. Plaintiff also criticizes the ALJ for failing to evaluate Dr. Wilson's opinion that "Mr. Weaver's body does not work properly,"[6] but Dr. Wilson offered no such opinion. *See* TR. 606-612. Perhaps Plaintiff is referring to Dr.

---

[5] (ECF No. 12:7).

[6] (ECF No. 12:6).

Wilson's opinion that Mr. weaver sustained a 54% whole person permanent partial impairment to his lumbar spine. (TR. 612). But even with such impairment, Dr. Wilson ultimately concluded that Mr. Weaver was capable of performing work so long as it involved no lifting, carrying, pushing, or pulling of greater than 50 pounds. (TR. 612). Plaintiff states that the Dr. Wilson's "actual medical opinion directly impacts and contradicts the ALJ's RFC and ultimate finding of non-disability,"[7] but he is mistaken. Because the ALJ concluded that Mr. Weaver retained the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), with the added limitation of only occasional stooping, Dr. Wilson's opinion was not only consistent with the RFC, but more favorable to Mr. Weaver. As a result, any error in the ALJ's failure to accord specific weight to Dr. Wilson's opinion is found to be harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (ALJ's error in failing to state whether he deemed opinion persuasive or the amount of weight accorded thereto was harmless because the opinion was consistent with the RFC and in some areas, the RFC was more favorable to Plaintiff than the omitted opinion); *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (approving harmless-error analysis when "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."); *Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

---

[7] (ECF No. 12:6).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. For the reasons explained, the Court **AFFIRMS** the Commissioner's decision

ENTERED on February 18, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE